## AFFIDAVIT OF SPECIAL AGENT BRIAN G. KENNEDY

I, Special Agent Brian Kennedy, Homeland Security Investigations ("HSI"), being duly sworn, depose and state under oath as follows:

### Introduction and Background

1. I am a Special Agent with the United States Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI") assigned to the Boston Field Office. I have been employed by HSI since February of 2007 and am currently assigned to the Border Enforcement Security Task Force (BEST) Investigations Group. As a member of the BEST, I am responsible for conducting investigations involving the unlawful transportation and smuggling of goods, contraband including controlled substances, and financial instruments. I have received specialized training and possess experience in the recognition, detection, and intricacies of currency and drug smuggling. I have successfully completed a training program in conducting criminal investigations at the Federal Law Enforcement Training Center in Brunswick, Georgia. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2. During my career, I have conducted or participated in hundreds of investigations involving the illegal manufacture, smuggling, and distribution of contraband, to include controlled substances, firearms and money laundering. I have participated in many aspects of controlled substance investigations and money laundering investigations to include numerous controlled deliveries of narcotics. I have interviewed numerous defendants, informants and witnesses with personal knowledge about the contraband trafficking business and the manner in which they launder illicit proceeds.

**Anticipatory Search Warrant and Tracking Warrant Requested**

3. This affidavit is submitted pursuant to Federal Rule of Criminal Procedure 41 in support of applications for an anticipatory search warrant and a tracking warrant.

4. **Package 1** is a FedEx package bearing waybill number 285429225758 addressed to "**RICARDO CARRASQUILLO, 23 WINTERGREEN CIRCLE, METHUEN, MA.**" As explained below, investigators approximately 6.73 kilograms of cocaine inside **Package 1**.

5. The requested anticipatory search warrant would authorize HSI agents, and other agents and members of law enforcement, upon meeting the conditions precedent (contained in Attachment C), to search the premises where **Package 1** is opened, as evidence by entry into the Subject Location for the items contained in Attachment B.

6. The conditions precedent is that **Package 1** is taken into a private premises (the Subject Location). As set forth herein, probable cause exists to believe that, at the Subject Location at the time of the execution of the search warrant (upon satisfaction of the above stated conditions precedent), there will be evidence of drug crimes, including cocaine smuggling, and indicia that **Package 1** has been opened.

7. For the reasons set forth below, I submit that probable cause exists to believe that the Subject Location will contain contraband and/or evidence of drug trafficking offenses upon the occurrence of the conditions precedent and that based upon my training and experience, probable cause exists to believe that the triggering events will occur as described below.

8. The requested anticipatory warrant would also authorize law enforcement personnel to insert the certain investigative devices and tools into **Package 1**, prior to the controlled delivery of **Package 1** to the building located at 23 Wintergreen Circle, Methuen. MA. The investigative devices and tools are:

(a) an electronic tripwire device, designed to alert investigators when **Package 1** is opened and/or moved;

(b) a GPS locator device, designed to provide investigators information concerning the precise location of **Package 1** after the controlled delivery; and

(c) a cellular telephone to act as an audio locator, designed to emit a loud sound when called in order to provide investigators with audible location information for **Package 1** after the controlled delivery.

9.      The requested tracking warrant would, pursuant to Federal Rule of Criminal Procedure 41(e)(2)(C) and Title 18, United States Code, Section 3117, authorize HSI Agents and other agents and members of law enforcement, to utilize real-time GPS tracking information from the above-referenced GPS locator device inserted into **Package 1** for a period of up to forty-five days in order to track the location of **Package 1** after the controlled delivery.  Probable cause exists to believe that such location information will constitute evidence of drug trafficking offenses, including conspiracy to distribute cocaine and possession of cocaine with intent to distribute, and will lead to the identification and location of those involved in committing them.

10.     Location information for **Package 1** will also help investigators locate **Package 1**, conduct physical surveillance, and lead to information regarding the identify and location of others involved in the criminal activity.  The term GPS stands for Global Positioning System.  GPS transmitters send electronic signals to satellites orbiting the earth, allowing those satellites to determine the approximate location of the transmitter by latitude and longitude.  Law enforcement agencies use GPS technology to determine the location of a parcels by inserting a GPS transmitter inside of them.  In addition to learning the static location of a parcel equipped with a transmitter, investigators can determine the path of a parcel that has been in motion by plotting the series of

locations reported by the transmitter.

11. **Package 1** is addressed to 23 Wintergreen Circle, Methuen, Massachusetts, which is a two-story, white colored, ranch style home with black shutters. In the center of the dwelling is a set of brick stairs leading up to a red front door. The number "23" is affixed to the right of the red front door. At ground level to the left of the brick stairs is a storm door in front of a white entry door with a window on either side. At ground level to the right of the brick there are two more windows. On the second level there are two windows to the left of the red front door and two bay windows to the right of the red front door. As there is a likelihood that **Package 1** will remain at 23 Wintergreen Circle at the time of the triggering events, I have included a full description and photograph of these premises as Attachment A.

## Target Offenses

12. Title 21, United States Code, Section 841 makes it unlawful "for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

13. Cocaine, a highly addictive tropane alkaloid and stimulant drug obtained primarily from the leaves of the coca plant, is classified under the Controlled Substances Act as a Schedule II controlled substance.

14. Title 21, United States Code, Section 846 provides that it is an offense to conspire or attempt to commit an offense defined in Section 841, including conspiring to distribute or to possess with intent to distribute any controlled substance, including cocaine.

15. The facts of this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and public records. This affidavit is intended to show that there is probable cause for the requested anticipatory search

warrant, tracking warrant, and authorization for use of the above-referenced investigative tools and devices, and does not set forth all of my knowledge about this matter.

## Probable Cause

16.     Based on my training and experience, Puerto Rico is often used by drug smugglers as a transshipment location for cocaine. Cocaine shipped from South America to Puerto Rico is often shipped to the mainland United States via commercial carriers like DHS and FedEx.

17.     Suspicious domestic parcels shipped via FedEx, per FedEx company protocol, are subject to be opened and searched by FedEx security. FedEx employees are trained to look for suspicious parcels that may contain bombs or drugs. The FedEx facility in Aguadilla, Puerto Rico handles both domestic and international packages. International parcels at the facility are subject to search by Customs and Border Protection (CBP). CBP maintains a presence at the Aguadilla FedEx facility, to include narcotics sniffing dogs. Domestic and international parcels to be delivered in the Boston area are subsequently sent to a distribution facility located in South Boston, Massachusetts.

18.     Experience and drug trafficking intelligence have demonstrated that FedEx is frequently used by drug traffickers for shipping drugs, drug proceeds, and drug distribution paraphernalia. Use of commercial carriers such as DHL, FedEx, or services like Priority Mail Express and Priority Mail offered by the United States Postal Service, are favored because of the speed, reliability, free telephone and internet package tracking service, as well as the perceived minimal chance of detection.

19.     On October 28, 2021, I was contacted by CBP and provided the following information: On October 27, 2021, FedEx security personnel assigned to a facility in Aguadilla, Puerto Rico inspected **Package 1**. **Package 1** was opened by a FedEx security supervisor, and

six brick objects were discovered. **Package 1** was manifested as: "clothing, fabric-clothes." The open **Package 1** was transported to a CBP enclosure at the airport, where K9 "Tank" (160026) alerted positive to the odor that he was trained to detect. One brick was probed, and a white powder was extracted and field tested with the Thermo Scientific Gemini, a field test I believe to be reliable. The results were positive for the properties of cocaine. HSI Special Agent Baez was contacted and responded. Cocaine was placed in evidence bag #L3098510 and secured. **Package 1's** shipper was indicated as Hiram Gomez 79 Calle Marcial Cabo Rojo, 00623 and the recipient was Ricardo Carrasquillo 23 Wintergreen CIR Methuen, MA 01844.

20. Records checks on the Target Address reveal what appears to be a four-bedroom, single family home at 23 Wintergreen Circle, Methuen, MA. No individuals by the name of Ricardo Carrasquillo were listed in public records checks at Target Address.

21. Based on my training and experience, I understand that individuals shipping parcels containing drugs and other contraband through United States Postal Service or through commercial carriers such as FedEx frequently use fictitious or partially fictitious shipping information on such parcels to provide the intended recipient with deniability should law enforcement investigate the parcel. Based on my training, experience, and familiarity with this investigation, I believe that the name "RICARDO CARRASQUILLO" is a fictitious name used to disguise the identity of the intended recipient of **Package 1**.

22. **Package 1** is now in the custody of HSI and located within the District of Massachusetts.

## Drug Traffickers' Use of Residences Generally

23. Through my work as an HSI Special Agent, I have acquired specialized knowledge in the activities of drug traffickers, including their use of residences and other homes

to store and process narcotics for distribution. Among other things, I have participated in the execution of search warrants at the residences of drug traffickers.

24. Based on my training and experience, including participation in other drug investigations and extensive discussions with other law enforcement officials experienced in narcotics investigations, I am also aware that it is common practice for drug traffickers to store drug-related paraphernalia and records in secure locations such as their residences, places of business, and stash houses for longer periods of time than they keep drugs. I have participated in the execution of numerous search warrants of the residences and/or stash houses of drug traffickers whose criminal activity is similar to that of the TARGET OFFENSE here. In my training and experience investigators typically recover drug-related evidence including cash, records, drug distribution materials, drugs, and other valuable items. Based on my training and experience, I believe that:

    a. Drug traffickers generally store their drug inventory, drug paraphernalia, drug proceeds, and drug records at or in their residences, businesses, drug stash houses, and/or vehicles;

    b. Drug traffickers will also generally seek to store their drug inventory, drug paraphernalia, drug proceeds, and drug records in the residences, businesses, and/or vehicles of relatives, trusted associates, or others in an effort to distance themselves from the drugs they are selling and to shield themselves from detection by law enforcement, or by setting up what is commonly referred to as a "stash house," typically a residence or commercial location and used to store drugs or to prepare drugs for distribution;

    c. Drug traffickers often possess firearms, ammunition, and other dangerous weapons to protect their proceeds, product, and person from others who might attempt to

rob them, and to enforce payment from their customers. Drug traffickers do not typically call the police when they are robbed of their drugs or drug proceeds and they do not typically file lawsuits to recover unpaid drug debts. As a result, it is common for drug traffickers to arm themselves instead of calling the police or seeking legal recourse. Further, since drug trafficking activities are conducted over an extended period of time, drug traffickers possess firearms, ammunition, body armor, firearm cleaning kits, scopes, holsters and other dangerous weapons for extended periods of time in convenient and safe locations such as their residences, businesses, stash houses, on their persons and in their vehicles;

    d. Drug traffickers often find it necessary to store large sums of cash received from the sale and distribution of controlled substances outside of the normal banking system. Accordingly, drug traffickers frequently maintain large amounts of cash and other valuable assets at their residences, businesses, stash houses, or vehicles, in order to maintain and finance their ongoing business, and often keep one or more currency counting machines to aid in counting drug proceeds. Drug traffickers also often make use of wire transfers, cashier's checks, and money orders to pay for controlled substances. Evidence of such financial transactions and records relating to income and expenditures of money and wealth in connection with drug trafficking and money laundering is also generally maintained in the residences, businesses, stash houses or vehicles of those involved in selling drugs or their relatives or trusted associates;

    e. Drug traffickers frequently maintain books, records, receipts, notes, ledgers, airline tickets, money orders, emails, and other documents relating to the transportation, ordering, sale and distribution of controlled substances, and monetary instruments and

other assets, and to debts and collections relating to monies owed or due for the distribution of controlled substances; and documents relating to the transportation of controlled substances, such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passport and visas, and credit card receipts.  Such documents may be maintained in paper or electronic form, and are generally maintained where the drug traffickers have ready access to them, including in cell phones and other electronic media capable of storing such information electronically, at locations such as their residences or other locations where they regularly conduct their drug business.  Because drug traffickers in many instances will "front" (that is, sell on consignment) controlled substances to their clients, or alternatively, will be "fronted" controlled substances from their suppliers, such record-keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances.  Often drug traffickers keep "pay and owe" records to show balances due for drugs sold in the past ("pay") and for payments expected ("owe") as to the trafficker's suppliers and the trafficker's dealers.  Additionally, drug traffickers must maintain telephone and address listings of clients and suppliers and keep them immediately available in order to efficiently conduct their drug trafficker business.  I am also aware that drug traffickers often maintain such documents related to their drug trafficking activities at their residences for an extended period of time, regardless of whether they are physically in possession of drugs on the premises;

      f.   It is common for drug dealers to secrete records of drug transactions in secure location within their cell phones, computers, residences, businesses, and/or other locations and devices over which they maintain dominion and control, for ready access and to

conceal these items from law enforcement officials;

      g.  It is common for significant drug traffickers to hide controlled substances, proceeds of drug sales (i.e., large amounts of currency, financial instruments, jewelry, safety deposit keys and deeds to real property), and records relating to income from controlled substances and expenditures of money and wealth, such as money orders, wire transfers, cashier's checks and receipts, bank statements, passbooks, checkbooks, and check registers, documents indicating travel in interstate and foreign commerce, and evidence of financial transactions relating to obtaining, transferring, hiding or spending large sums of money made from controlled substance trafficking activities in secure locations within residences, businesses, drug stash locations, or other locations over which they maintain dominion and control, for ready access and to conceal them from law enforcement officials;

      h.  Drug traffickers commonly maintain electronic and paper books or documents which reflect names, addresses, and/or telephone numbers of their associates in the trafficking organization, and other contact or identification data relating to the distribution of controlled substances.  Such records and items are maintained where the traffickers have ready access to them, commonly on the traffickers' cellular telephone(s).  They also tend to maintain for long periods of time telephone billing records that evidence the placing of large numbers of calls each month in connection with narcotics dealing;

      i.  Drug traffickers commonly have photographs of themselves, their associates, their property and their products in their possession or in their residences, and frequently maintain these photographs on the cellular telephone(s) and other electronic devices;

      j.  Drug traffickers frequently maintain the items described above inside safes,

key-lock strong boxes, suitcases, safe-deposit boxes and other containers, which are further secured by combination and/or locks of various kinds in order to hide the contraband from other individuals living at or in the vicinity of their residences or stash houses;

      k. Drug traffickers frequently build "stash" places within their residences or other locations in order to store illicit drugs as well as the items described above;

      l. Residents, whether drug traffickers or not, typically keep items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the subject premises.  Such identification evidence is typical of the articles people commonly maintain in their residences, such as cancelled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, and keys;

      m. Drug traffickers commonly possess and use multiple cellular telephones simultaneously to conduct their drug trafficking activities and many of these cellular telephones are kept at residences or drug stash houses. Moreover, the particular numbers of and the particular numbers dialed by particular cellular telephones can be evidence of drug trafficking, particularly in a case involving the interception of communications between drug traffickers.  Such numbers can confirm identities of particular speakers and the occurrence of certain events. It is common for these cellular telephones to be retained, although not necessarily used, for months or longer by drug traffickers in their vehicles, residences, and businesses.  Drug traffickers often do not discard their cellular telephones immediately after they stop actively using them.  Therefore, while it is common for drug traffickers to stop using cellular telephones frequently, it is far less common for drug traffickers to discard their cellular telephones after they switch to new cellular telephones.

As a result, I am aware that collections of cell phones have been found during drug trafficking search warrants of stash houses or residences that have included cell phones that were no longer being used by a particular drug trafficker but had nevertheless been retained;

      n.  Drug traffickers often attempt to launder/legitimize the proceeds of illicit drug distribution and to otherwise conceal such proceeds from discovery by law enforcement. To do so, drug traffickers often place assets, such as vehicles and residences, in the names of other persons to conceal their true ownership and the manner in which they were acquired.  Records reflecting the implementation of such deceptive practices, such as deeds, titles, and service records, are likely to be found either inside the residence, stash houses, businesses, or vehicle of the drug trafficker or inside the residence, business, or vehicle of the person in whose name the asset is listed.

**Proposed Transaction and Installation of the Tripwire Device, GPS Locator, and Audio Locator**

25.      The cocaine discovered in **Package 1** has been placed in its original packaging to give the appearance that it has not been opened.  An HSI Special Agent, acting in an undercover capacity and dressed as a FedEx delivery person, will deliver **Package 1** to 23 Wintergreen, Circle, Methuen, Massachusetts.  HSI agents will maintain constant surveillance of Target Address to determine if the package is taken into said residence or to determine if **Package 1** is picked up by someone.

26.      In addition, in advance of the planned controlled delivery of **Package 1**, and pursuant to the requested anticipatory and tracking warrants, investigators intend to conceal, and hereby seek authorization to conceal, the above-described equipment in **Package 1.** These devices

will assist in the investigation.

27.     The tripwire device is not capable of capturing or transmitting video or audio communications. It will be inserted within **Package 1** solely for the purpose of determining when **Package 1** is opened or moved after the controlled delivery of the parcel.

28.     The GPS locator is not capable of capturing or transmitting video or audio communications. It will be inserted within **Package 1** solely for the purpose of providing location information of **Package 1** after the controlled delivery of the parcel.

29.     The audio locator is capable of capturing and/or transmitting audio communications, but those functions will remain inoperable while the locator is within **Package 1** and the device will not be used to capture or transmit audio communications. Rather, the audio locator will be inserted within **Package 1** and triggered remotely solely for the purpose of providing an audible sound to assist investigators in locating **Package 1** after the controlled delivery.

30.     It has been my experience in prior controlled deliveries that the packages will either be transported to another location or opened shortly after delivery is made. In light of these circumstances, there may be practical difficulties in obtaining access to the United States Magistrate Judge in a timely fashion. Therefore, I request that an anticipatory search warrant for any premises where the conditions precedent have been met, be issued today with its execution contingent upon fulfillment of the following:

    a.     Pursuant to the search warrant requested above, on or about Monday, November 1, 2021, and in the event delivery is unsuccessful, on succeeding dates thereafter, within the time period authorized, an HSI Special Agent wearing a FedEx

uniform, will attempt to deliver **Package 1** to the building located at 23 Wintergreen Circle, Methuen, Massachusetts.

      b.     HSI Agents intend to leave **Package 1** at the red door at the top of the brick staircase and monitor both visually and through the use of GPS device.

      c.     Agents will conduct surveillance of 23 Wintergreen Circle, Methuen Massachusetts, prior to, during, and after the delivery is made. Once a law enforcement officer observes the **Package 1** enter 23 Wintergreen Circle, Methuen Massachusetts, agents will continue to monitor.

      d.     If **Package 1** is not taken inside this address, Agents will follow **Package 1** visually (when possible) and will also utilize the GPS information to track **Package 1** to its intended location. At no time will the anticipatory search warrant be executed without the conditions precedent occurring: that is that **Package 1** has been taken into a private premises.

31.     I further request that the Court issue a warrant authorizing members of the HSI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device in **Package 1** within the District of Massachusetts, within 10 calendar days of the warrant's issuance, and to monitor the tracking device for a period of forty-five (45) days following the warrant's issuance. In the event that the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period of forty-five (45) days following the date that the warrant is issued. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

32. Agents will cease utilization of the tracking device upon execution of the anticipatory search warrant or recovery of the devices contained within **Package 1**.

### Conclusion

33. Based upon the foregoing, and based upon my training and experience, I submit that upon delivery of the re-packaged **Package 1** to the building at 23 Wintergreen Circle, Methuen, Massachusetts, there will be probable cause to believe that the premises where **Package 1** is opened will contain evidence of drug trafficking offenses, including cocaine smuggling and indicia that **Package 1** has been opened.

34. Because the warrant and accompanying affidavit and application in support thereof reveal an ongoing investigation, I also request that the warrant and accompanying affidavit and application be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against the flight of fugitives, and better ensure the safety of agents and others, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office, and may be served on HSI Special Agents, other federal, state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative law enforcement officers, as necessary to effectuate the warrant.

_____
BRIAN KENNEDY
SPECIAL AGENT
HOMELAND SECURITY INVESTIONS


Subscribed and sworn to via telephone in accordance with Rule 4.1 of the federal rules of Criminal Procedure on this **Oct 29, 2021** day of October, 2021.

_____
HON. JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

# ATTACHMENT A

The building located at 23 Wintergreen Circle, Methuen, Massachusetts, is a two-story ranch style home, white in color with black shutters.  There are two entrances to the building.  The main entrance is a door, red in color, located at the top of a brick staircase with the number "23" affixed to the right of the red door. Facing the building from Wintergreen Circle, there are four windows on the lower level, and four windows on the second level.  There is a door, white in color, to the left of the red door, at ground level, located at the end of an asphalt driveway.



## ATTACHMENT B

Items to Be Seized

For the period from January 1, 2021, to the present, all records, in whatever, form, and tangible objects that constitute evidence, fruits, or instrumentalities of attempted distribution of a controlled substance in violation of 21 U.S.C. §846 and 21 U.S.C. §841(a)(1) (hereinafter, the "TARGET OFFENSE"):

1. FedEx package bearing waybill number 285429225758 addressed to "**RICARDO CARRASQUILLO, 23 WINTERGREEN CIRCLE, METHUEN, MA** and its contents;
2. Materials, equipment and paraphernalia associated with the manufacturing, ordering, possession, purchase, storage, distribution and/or transportation of controlled substances, including but not limited to packaging materials, storage bins, containers, scales, baggies, presses, press punches, molds, dies, bindles, sifters, razor blades, spoons, syringes, funnels, grinders, glass pipes, plastic wrap, heat sealers, sealing devices, tin foil, cellophane, jars, surgical gloves, cutting agents (including, but not limited to, lactose, inositol, and Mannitol) and aromatic substances (including, but not limited to, soap, dryer sheets, wood shavings);
3. Safes, strong boxes, safe keys, strong box keys, and safe deposit box keys;
4. Indicia of use, rental, and/or ownership of motel rooms, hotel rooms, and/or storage units, including rental agreements, invoices/bills, receipts, storage unit records, contracts, leases, payments and inventories;
5. Financial records: all financial records of or relating to Ricardo Carrasquillo and his nominees, assignees, or co-conspirators, including financial statements, balance sheets, income statements, cash flow statements, ledgers, journals, accounts receivable, accounts payable, leases, bank statements, deposit tickets, deposit items, checks, checkbooks, check registers, passbooks, money orders, cashier's checks, official checks, bank drafts, wire transfer instructions and receipts, withdrawal slips, credit memos, debit memos, signature cards, account applications, automatic teller machine receipts, safe deposit box applications, credit card statements, charge slips, receipts brokerage statements, buy and sell orders and other items evidencing the obtaining, secreting, transfer, or concealment of assets and the obtaining, secreting, transfer, concealment, or expenditure of money;
6. Currency, cash, and jewelry related to the generation of income from the sale of controlled substances and the expenditure of such income, and records related to the sale/purchase/lease of automobiles, real estate, financial instruments, precious metals, and other items of value;
7. Records reflecting ownership of assets, including real estate and other valuables, obtained from illegal trafficking of controlled substances;
8. Documents, books, records, receipts, notes, ledgers, travel itineraries, tickets, and/or other papers relating to the purchase, sale, and/or distribution of controlled substances and paraphernalia related to controlled substances and counterfeit substances, including all travel records;

9. Photographs, records of telephone numbers, address books, or papers which reflect the identities, names, addresses, and/or telephone numbers of associates and co-conspirators involved directly and indirectly in the illegal trafficking of controlled substances;
10. Correspondence that reflects the illegal purchase, sale, and/or distribution of controlled substances;
11. Empty and/or unused shipping boxes or packages, and shipping materials;
12. Cellular telephones, including smartphones, reasonably believed to be used by or belonging Ricardo Carrasquillo or his co-conspirators;
13. For any hardware, software, mobile phones, or storage media called for by this warrant or that might contain things otherwise called for by this warrant (the "equipment"):
    a. evidence of who used, owned, or controlled the computer equipment;
    b. evidence of the presence or absence of malicious software that would allow others to control the items, and evidence of the presence or absence of security software designed to detect malicious software;
    c. evidence of the attachment of other computer hardware or storage media;
    d. evidence of counter-forensic programs and associated data that are designed to eliminate data;
    e. evidence of when the computer equipment was used;
    f. passwords, encryption keys, and other access devices that may be necessary to access the computer equipment;
    g. records and tangible objects pertaining to accounts held with companies providing Internet access or remote storage.

## Definitions

For the purpose of this warrant:

A. "Equipment" means any hardware, software, storage media, and data.
B. "Hardware" means any electronic device capable of data processing (such as a cellular telephone or smartphone, wireless communication device, or GPS navigation device); any peripheral input/output device (such as a drive intended for removable storage media); any related communication device (such as a SIM card), and any security device, (such as electronic data security hardware and physical locks and keys).
C. "Software" means any program, program code, information or data stored in any form (such as an operating system, application, utility, communication and data security software; a log, history or backup file; an encryption code; a user name; or a password), whether stored deliberately, inadvertently, or automatically.
D. "Storage media" means any media capable of collecting, storing, retrieving, or transmitting data (such as a hard drive or memory card).
E. "Data" means all information stored on storage media of any form in any storage format and for any purpose.
F. "A record" is any communication, representation, information or data. A "record" may be comprised of letters, numbers, pictures, sounds or symbols.

**RETURN OF SEIZED EQUIPMENT**

If the owner of the seized equipment requests that it be returned, the government will attempt to do so, under the terms set forth below. If, after inspecting the seized equipment, the government determines that some or all of this equipment does not contain contraband or the passwords, account information, or personally-identifying information of victims, and the original is no longer necessary to retrieve and preserve as evidence, fruits or instrumentalities of a crime, the equipment will be returned within a reasonable time, if the party seeking return will stipulate to a forensic copy's authenticity (but not necessarily relevancy or admissibility) for evidentiary purposes.

If seized equipment cannot be returned, agents will make available to the system's owner, within a reasonable time period after the execution of the warrant, copies of files that do not contain or constitute contraband; passwords, account information, or personally-identifying information of victims; or the fruits or instrumentalities of crime. For purposes of authentication at trial, the Government is authorized to retain a digital copy of all equipment seized pursuant to this warrant for as long as is necessary for authentication purposes.

## ATTACHMENT C

The execution of this warrant is CONDITIONED upon:

1.      The delivery of **Package 1**, a FedEx package bearing waybill number 285429225758 to 23 WINTERGREEN CIRCLE, METHUEN, MA  and

2.      The entry of Package 1 into 23 WINTERGREEN CIRCLE, METHUEN, MA **OR** a private premises.